| STATE OF SOUTH DAKOTA | * | IN CIRCUIT COURT |
| COUNTY OF GRANT | :ss * | THIRD JUDICIAL CIRCUIT |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| ALAN BERGQUIST, D.C. | * * * | |
| Plaintiff, | * * | CIV. 09-<br>SUMMONS |
| vs. | * * | |
| STATE FARM MUTUAL<br>AUTOMOBILE INSURANCE CO.<br>and HARTFORD LIFE AND<br>ACCIDENT INSURANCE CO. | * * * * * | |
| Defendants. | * * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE-NAMED
DEFENDANTS:

You are hereby summoned and required to serve upon Lee Schoenbeck,
Plaintiff's attorney, whose address is P. O. Box 1325, Watertown, South Dakota, 57201,
an Answer to the Complaint which is herewith served upon you and filed in the Grant
County Clerk of Courts Office for the Third Judicial Circuit, Grant County, South Dakota.
You must serve the Plaintiff's attorney with your Answer within thirty (30) days after the
service of this Summons upon you, exclusive of the day of service. If you fail to do so,
judgment by default will be taken against you for the relief demanded in the Complaint.

This action involves an insurance dispute.

Dated this 22 day of April 2009.

SCHOENBECK LAW

By: _____

LEE SCHOENBECK
Attorney for Plaintiff
P. O. Box 1325
Watertown, South Dakota, 57201
(605) 886-0010

| STATE OF SOUTH DAKOTA | * | IN CIRCUIT COURT |
| | :ss | |
| COUNTY OF GRANT | * | THIRD JUDICIAL CIRCUIT |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| ALAN BERGQUIST, D.C. | |
| Plaintiff, | CIV. 09- |
| | COMPLAINT |
| vs. | |
| STATE FARM MUTUAL | |
| AUTOMOBILE INSURANCE CO. | |
| and HARTFORD LIFE AND | |
| ACCIDENT INSURANCE CO. | |
| Defendants. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

COMES NOW the Plaintiff, Alan Bergquist, D.C., by and through his attorney of record, Lee Schoenbeck, and for his cause of action states and alleges as follows:

1. Plaintiff, Alan Bergquist, D.C. (Dr. Bergquist), is a resident of Grant County, South Dakota.

2. Dr. Bergquist was insured by State Farm Mutual Automobile Insurance Co. (State Farm) with a disability income insurance policy, policy no. HB754293-4141 (State Farm Policy).

3. State Farm has home offices in Bloomington, Illinois, and does business in South Dakota, including the sale of the State Farm Policy.

4. Dr. Bergquist was insured by Hartford Life and Accident Insurance Co. (Hartford) with a disability income insurance policy issued through the National Business Association for Chiropractors, policy no. AGP5672 (Hartford Policy).

5. Hartford has home offices in Simsbury, Connecticut, and does business in South Dakota, including the sale of the Hartford Policy

## COUNT I – STATE FARM BREACH OF CONTRACT

6. Dr. Bergquist realleges and incorporates by reference hereto all paragraphs as through they were fully set forth herein.

7. Dr. Bergquist began experiencing occasional sharp electrical sensations radiating through his right lower cervical spine to his shoulder, from which

he would experience involuntary movement of the shoulder due to the contraction of muscles through his neck and upper shoulder region.

8.  The electrical sensations and the subsequent involuntary movements of Dr. Bergquist's shoulder forced him to sell his chiropractic practice, and discontinue treating patients.

9.  Dr. Bergquist submitted a claim for disability benefits pursuant to the State Farm Policy in February 2007.

10. The State Farm Policy provides that total disability benefits will be paid if the insured has an "inability to perform, with reasonable continuity in a usual and customary manner, the substantial and material acts of the insured's occupation, business, or profession."

11. The State Farm Policy had only a 180 day elimination period.

12. Manipulation of the cervical spine is a substantial and material act in Dr. Bergquist's chiropractic profession.

13. Dr. Bergquist cannot perform cervical spine manipulation in the usual and customary manner, due to the involuntary reaction he has to the electrical sensations in his neck and shoulder.

14. As a result of the involuntary reaction to the electrical sensations in his neck and shoulder, Dr. Bergquist is unable to perform, with reasonable continuity in a usual and customer manner, the substantial and material acts of his chiropractic profession.

15. On January 14, 2009, State Farm finally issued a decision with respect to the pending claim.

16. State Farm based its denial on their determination that Dr. Bergquist was "not totally disabled as defined in [the] policy."

17. State Farm breached the State Farm Policy contract, and owes Dr. Bergquist the benefits provided under the contract.

### COUNT II – HARTFORD BREACH OF CONTRACT

18. Dr. Bergquist realleges and incorporates by reference hereto all paragraphs as through they were fully set forth herein.

19. The Hartford Policy provides that Dr. Bergquist is totally disabled if he is unable to do the essential duties of his occupation.

2

20. Cervical spine manipulation is an essential duty of a chiropractic occupation.

21. Cervical spine manipulation is substantial and not incidental to Dr. Bergquist's occupation.

22. Cervical spine manipulation is fundamental to Dr. Bergquist's occupation.

23. Cervical spine manipulation cannot reasonably be omitted or changed in Dr. Bergquist's occupation.

24. Dr. Bergquist has electrical sensations that cause involuntary movements to his right shoulder when he is performing active patient care, including cervical spine manipulation.

25. Dr. Bergquist stopped working in his chiropractic occupation due to the neck pain and resulting involuntary movements to his right shoulder while involved in patient care.

26. The Hartford Policy has only a 90 day elimination period.

27. Dr. Bergquist is disabled under the terms of the Hartford Policy.

28. On March 5, 2008, Dr. Bergquist submitted an Application for Disability Income Benefits pursuant to the Hartford Policy.

29. On September 12, 2008, Hartford denied benefits under the Hartford Policy.

30. Hartford breached the Hartford Policy contract, and owes Dr. Bergquist the benefits provided under the contract.

## COUNT III – STATE FARM BREACH OF DUTY OF GOOD FAITH AND FAIR DEALINGS

31. Dr. Bergquist realleges and incorporates by reference hereto all paragraphs as through they were fully set forth herein.

32. Every contract in South Dakota includes the duty of good faith and fair dealings.

33. State Farm did not honor its duty of good faith and fair dealings with respect to Dr. Bergquist.

34. State Farm preferred itself and its own interest, in contravention of its duty of good faith and fair dealings.

3

35. State Farm breached its duty of good faith and fair dealings owed to Dr. Bergquist.

### COUNT IV – STATE FARM COMMITTED BAD FAITH

36. Dr. Bergquist realleges and incorporates by reference hereto all paragraphs as through they were fully set forth herein.

37. State Farm drafted the State Farm Policy.

38. The State Farm Policy provides that benefits would be paid if the professional isn't able to do the usual and customary duties of a substantial material act of the occupation.

39. State Farm's own expert identified for them on October 27, 2008, that Dr. Bergquist should not do cervical spine manipulation, given his condition, which is one example of the bad faith basis of State Farm's denial.

40. State Farm acted in bad faith toward Dr. Bergquist.

41. State Farm's conduct injured Dr. Bergquist.

### COUNT V – STATE FARM'S BREACH OF FIDUCIARY DUTY

42. Dr. Bergquist realleges and incorporates by reference hereto all paragraphs as through they were fully set forth herein.

43. Dr. Bergquist obtained disability income insurance coverage from State Farm.

44. Dr. Bergquist trusted State Farm to fairly meet their disability income insurance coverage obligations under the disability income insurance contract.

45. Once Dr. Bergqiust was disabled, he had no option but to trust State Farm to look out for his interests under the disability income insurance contract—he couldn't change disability income insurance carriers at that point in time.

46. State Farm preferred their interests to the interests of their insured by repeatedly refusing to honor the disability income insurance relationship.

47. State Farm breached their fiduciary duty owing to Dr. Bergquist.

### COUNT VI - STATE FARM ATTORNEY'S FEES

48. Dr. Bergquist realleges and incorporates by reference hereto all paragraphs as through they were fully set forth herein.

4

49. State Farm had an insurance contract with Dr. Bergquist.

50. State Farm refused to pay the full amount of the disability income insurance responsibility owing to Dr. Bergquist.

51. State Farm's refusal to pay was without reasonable cause, as the language of the State Farm Policy does not provide a reasonable basis for the position taken by State Farm in refusing to pay the disability income insurance benefits to Dr. Bergquist.

52. Additionally, State Farm's refusal was vexatious, because State Farm ignored the clear language of the contract and all of the attempts by Dr. Bergquist to get State Farm to consider the terms of the contract as it applied to Dr. Bergquist.

53. State Farm owes Dr. Bergquist for the attorney's fees incurred by him to enforce his insurance contract against State Farm.

### COUNT VII - HARTFORD ATTORNEY'S FEES

54. Dr. Bergquist realleges and incorporates by reference hereto all paragraphs as through they were fully set forth herein.

55. Hartford had an insurance contract with Dr. Bergquist.

56. Hartford refused to pay the full amount of the disability income insurance responsibility owing to Dr. Bergquist.

57. Hartford's refusal to pay was without reasonable cause, as the language of the Hartford Policy does not provide a reasonable basis for the position taken by Hartford in refusing to pay the disability income insurance benefits to Dr. Bergquist.

58. Additionally, Hartford's refusal was vexatious, because Hartford ignored the clear language of the contract and all of the attempts by Dr. Bergquist to get Hartford to consider the terms of the contract as it applied to Dr. Bergquist.

59. Hartford owes Dr. Bergquist for the attorney's fees incurred by him to enforce his insurance contract against Hartford.

## COUNT VIII - STATE FARM PUNITIVE DAMAGES

60. Dr. Bergquist realleges and incorporates by reference hereto all paragraphs as through they were fully set forth herein.

61. With respect to Dr. Bergquist, State Farm has been guilty of oppression, fraud, or malice, actual or presumed, or willful or wanton misconduct, and is therefore subject to exemplary damages.

WHEREFORE, Dr. Bergquist prays for judgment against State Farm and Hartford as follows:

1. For the contractual amounts owing by State Farm and Hartford under the disability income insurance contracts.

2. For attorney's fees pursuant to SDCL 58-12-3.

3. For a reasonable amount to be determined by a jury for the tortious conduct of State Farm toward Dr. Bergquist.

4. For exemplary damages against State Farm in an amount to be determined by a jury.

Dated this 22ⁿᵈ day of April 2009.

SCHOENBECK LAW

By:
LEE SCHOENBECK
Attorney for Plaintiffs
P. O. Box 1325
Watertown, South Dakota  57201
(605) 886-0010

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES.**

6

| STATE OF SOUTH DAKOTA | | IN CIRCUIT COURT |
|---|---|---|
| | :ss | |
| COUNTY OF GRANT | | THIRD JUDICIAL CIRCUIT |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

ALAN BERGQUIST, D.C.

      Plaintiff,

vs.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE CO.
and HARTFORD LIFE AND
ACCIDENT INSURANCE CO.

      Defendants.

CIV. 09-

PLAINTIFF'S INTERROGATORIES,
REQUESTS FOR PRODUCTION
OF DOCUMENTS AND
REQUEST FOR ADMISSIONS TO
DEFENDANT STATE FARM MUTUAL
AUTOMOBILE INSURANCE CO.
(SET I)

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

TO:   DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.:

     PLEASE TAKE NOTICE that, Plaintiff hereby propounds the following written interrogatories, requests for production, and request for admissions, for answer under oath within 45 days of the date of service hereof.

     Plaintiff's interrogatories and requests for production shall be deemed to be continuing in nature. Therefore, if any information is discovered by, or becomes known to, Defendant, Defendant's attorney, or anyone acting on Defendant's behalf, after responding to the same and before trial, which would alter, change, or add to the responses provided, Plaintiffs thereby demands that such information be provided forthwith.

## DEFINITIONS

1. "You" or "your" means the Defendant, State Farm Mutual Automobile Insurance Co. (State Farm), its predecessors in interest, if any, its present and former officials, executives, officers, employees, agents, and all other Persons acting or purporting to act on behalf of the defendant.

2. "Document(s)" means and includes any type of writing or recording and includes, without limitation, all written materials (including drafts of such materials) such as letters, memoranda, reports, studies, minutes, diary entries

(including calendar entries indicating dates and participants to any meetings), notes or records of telephone conversations, conferences or other oral communications and appointment records, time records, ledgers, journals, financial or accounting records, personnel records, annual reports, trial balances, work papers, schedules, photographs, videos, recordings, charts, graphs, transcriptions, tapes, discs, printouts, data compilations from which information can be obtained, databases stored in computers (whether magnetically or digitally), e-mail messages, and other electronic data processing materials. It also includes each copy of a Document that is not identical in all respects with or that contains any notation not appearing on any other copy of such Document(s).

3. "Claim" refers to claim which is the subject of the Plaintiff's Complaint.

4. "State Farm Policy" refers to the disability income insurance policy no. HB754293-4141 issued by Defendant State Farm and in force on the date of the Claim.

5. To "identify" a Person means to state his or her name, current or last known address, telephone number and employment now and at the time material to the occurrences giving rise to the Complaint.

6. To "identify" a document means to describe it sufficiently to be able to later request its production and to identify as aforesaid, the Custodian thereof, or to attach it to a copy of your answers. If any such document was, but is no longer in your possession, or subject to your control, state the disposition of said document and the reasons for such disposition and the date thereof.

7. "Person" means a natural Person, corporation, association, partnership, sole proprietorship or public entity.

8. "Dr. Johnson's letter" means the letter of October 27, 2008, from James F. Johnson, M.D., a copy of which is attached hereto as Exhibit A.

9. "State Farm Denial Letter" means the letter from Heidi Winkle, the Health Claim Team Leader of the health insurance department of State Farm, dated January 14, 2009 a copy of which is attached hereto as Exhibit B.

## INTERROGATORIES

1. Please Identify the Person who is answering these Interrogatories.

2. Please set forth each fact, reason, and provision in the State Farm Policy that supports the statement by You in Exhibit B, to Dr. Bergquist that: "you are not totally disabled as defined in your policy."

2

3. Identify each of the State Farm employees, agents, contractors, or representatives that participated in or contributed to Your conclusion in Exhibit B that Dr. Bergquist was "not totally disabled as defined in your policy." For each of these Persons, please set forth their qualifications, experience, and training that You believe makes them a Person capable of reaching this conclusion.

4. Please Identify all of the Documents that the individuals that You've Identified in the preceding interrogatory reviewed in reaching the conclusion that Dr. Bergquist was "not totally disabled as defined in your policy." Specifically Identify which Documents were reviewed by which of the individuals in Your answer to the preceding interrogatory. Do not provide a generic list of documents that does not identify which ones each Person reviewed.

5. Please Identify and list all employees, agents, or representatives of Your company who were in any way responsible for evaluating or making any decisions with respect to the Claim.

6. Please Describe the process that You utilized with respect to evaluating or making decision with respect to the Claim.

7. Please Identify all Documents that You reviewed when evaluating or making decisions with respect to the Claim.

8. As to each employee or agent named in response to Interrogatory 3, list the job title or classification held by the individual at the time he or she handled or processed Plaintiff's Claim, and his or her current title or job classification.

9. If any Person identified in response to interrogatory no. 3 no longer works for You, provide his or her name, last position with Your company, last known address and telephone number.

10. Of those individuals identified in response to interrogatory no. 3, provide the name of that individual's supervisor at the time Plaintiff's Claim was handled.

11. For each supervisor identified in response to the preceding interrogatory, list that supervisor's job title, duties, and authority at the time Plaintiff's Claim was handled and the supervisor's current title or job classification.

12. If any supervisor identified in response to interrogatory no. 10 no longer works for You, provide his or her name, last position with Your company, and last known address and telephone number.

13. Describe the experience, training, and educational background of each Person who investigated, evaluated, managed, reviewed, or otherwise

3

handled Plaintiff's Claim, or rendered any written or oral opinion and/or report regarding the Claim.

14. Have You ever had a claim asserted against You for attorney's fees pursuant to SDCL 58-12-3?

15. If Your answer to the preceding interrogatory is in the affirmative, and if after the hearing, a party was allowed to proceed with a claim for attorney's fees, please describe each action by providing the names and addresses of all parties, the date of the filing of the action; the venue in which the action was filed; the name of counsel adverse to You; whether the action was in federal or state court; and the terms of any disposition of the action.

16. Have You ever had a claim asserted against You for punitive or exemplary damages, which resulted in a hearing taking place pursuant to SDCL 21-1-4.1?

17. If Your answer to the preceding interrogatory is in the affirmative, and if after the hearing, a party was allowed to proceed with either discovery or the trial of a claim for punitive or exemplary damages, please describe each action by providing the names and addresses of all parties, the date of the filing of the action; the venue in which the action was filed; the name of counsel adverse to You; whether the action was in federal or state court; and the terms of any disposition of the action.

18. Please Identify any Person that You will expect to call as an expert with respect to this litigation.

19. For each expert identified in response to the preceding Interrogatory, please state:

      a.    the experience and qualifications of the expert;

      b.    the subject matter on which the expert is expected to testify;

      c.    the substance of the facts and opinions to which the expert is expected to testify;

      d.    a summary of the grounds for each such opinion;

      e.    a bibliography of all literature, treatises, papers or other publications supporting the opinion of the expert;

      f.    any articles, books, or other publications which the expert has written or to which the expert has contributed; and

g.   all prior testimony, whether in a deposition, at a hearing, or a trial in the last four (4) years; and with respect to each such testimony, please provide the date of the testimony, the venue of the case in which the testimony was given, the caption and/or name of the case in which the testimony was given, and the name, address, and telephone number of the attorney who retained your expert.

20. Please Identify any legal action in the last ten years brought against You for the breach of the duty of good faith and fair dealing, or for bad faith, with respect to a disability income insurance policy.

21. Please Identify any legal action in the last ten years brought against You alleging bad faith in Your handling of an insurance relationship or contract in South Dakota.

22. Please Identify each and every time You communicated with Plaintiff regarding the Claim.

23. Please state whether the communication(s) Identified in the preceding interrogatory were:

a.   In writing or oral discussion(s);

b.   The date(s) of the communication(s); and

c.   The topic of the communication(s).

24. Please Identify the Person(s) who communicated with Plaintiff on Your behalf for each and every date of communication.

25. Please Identify each and every Document that You generated as a result of Your communication(s) with Plaintiff regarding the Claim.  Please attach to your answers any Documents Identified in answer to this interrogatory.

26. Please Identify all Persons who have knowledge or information relating to the claims and defenses made herein or known to you, or your counsel, associates, investigators, employees, or agents, whether obtained in the course of investigation, preparation of trial, or otherwise.

27. With regard to each Person Identified in response to the preceding Interrogatory, please state what information or knowledge you believe each such Person possesses concerning the claims and defenses herein.

28. Please Describe all investigation that You did when You received the Claim.

29. Please state the number of disability income insurance policies that You have issued in the state of South Dakota each year for the last 10 years.

30. As any part of their compensation or evaluation, do You utilize any type of incentive program for Your insurance adjusters or claims representatives, or any of the Persons Identified above in these interrogatory answers, or any Persons that supervise any of the preceding in any respect?

31. If Your answer to the preceding Interrogatory is in the affirmative, please Describe the incentive program, and Identify and provide copies of all Document(s) with respect to the establishment, operation, execution, and explanation of the incentive program.

32. As any part of Your employee compensation or evaluation, do You utilize any type of bonus or incentive program at Your company?

   a.    If You do, please identify the time periods the program was in place, and Describe the program;
   b.    If You do, please provide copies of the Documents that Describe and implement the program; and
   c.    If You do, please Identify which of Your personnel are covered by the program.

33. Please list for the past five years all bonus, recognition, or incentive-type payments or awards under any compensation plans You have, for the Persons that You have Identified as in Your answer to Interrogatory nos. 3 and 10.

34. Please identify the individual goals and business unit goals for each of the Persons that You Identified in Interrogatory nos. 3 and 10 for the last five years.

35. Please Identify any manual, guide, policy, or directive You have for Your claims department, with respect to how the claims department should handle claims for benefits, and specifically with respect to benefits provided by the Disability Income Insurance Policy.  Please produce a copy of all Documents that You Identify in answer to this Interrogatory.

36. Please Identify each and every tangible item or exhibit relating to or bearing upon any fact or legal issue in the above entitled lawsuit in Your possession, Your attorney, or any other Person or entity working for, or acting behalf of, You.

37. Please Identify each and every tangible item or exhibit You expect to rely upon during the trial of this matter.

38. Please set forth the amounts You have reserved for this Claim, when those reserves were established, whether any changes have been in the reserves, and what new amounts were reflected after changes were made in the reserves.

6

39. Did any medically trained Person review the Claim, besides James F. Johnson, M.D., identified in Exhibit A? If so, for the other individuals, Identify them, as that term is defined above, and provide the following:

    a. The dates on which they handled any aspect of the Claim;
    b. The Documents they reviewed in handling the Claim;
    c. The Persons they interviewed in handling the Claim;
    d. Any Documents they produced containing any of their conclusions as part of their work on the Claim. Please produce copies of those Documents with Your answers to these Interrogatories; and
    e. Set forth the curriculum vitae and any other information upon which You base the decision that this Person has the medical qualifications to address some aspect of the Claim.

40. With respect to James F. Johnson, M.D., who authored Exhibit A attached hereto, did he author any reports or contribute any other information to the decision You made on the claim, besides Exhibit B and the October 3, 2008, five-page report authored by him that you have provided to Dr. Bergquist? If he did, please Identify the other information, who it was communicated to at State Farm, how it was communicated to State Farm, and produce copies of all Documents or memorandum that reflect any of the information and/or opinions provided to You by James F. Johnson, M.D.

41. Identify all information provided to James F. Johnson, M.D. for his work with respect to the Claim, including the following:

    a. The Person who provided the information to him, when they provided it, and what information they provided on each occasion;
    b. Produce copies of all Documents provided to him;
    c. Was any information provided in other than written form, and if so by whom, when, and what information was provided on each occasion?

42. Identify (as that term is defined above) all doctors of chiropractics that You consulted with or that participated in any manner in Your handling of the Claim.

43. As to each Person who prepared or assisted in the preparation of any responses to the preceding interrogatories, state that person's name, business address, job title and duties, and what that person did with respect to preparation of the interrogatory responses, including by number the specific interrogatory responses that the person prepared or assisted in preparing.

44. Please state whether each answer to each interrogatory set forth herein accurately sets forth all facts known to You relating to the subject matter of the interrogatory.

7

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Please produce all Documentation for each payment that you have listed in Your answer to Interrogatory no. 33 above, to each of the Persons You Identified.  The Documents should include standards utilized, and any information about how the decision was made to make the particular payment.

2. Please produce all Documents that are part of the process for the development of the criteria or standards for awarding the bonuses, incentives, or recognition payments, for any of Your bonus or incentive plans for Your employees for the last five years.

3. Please produce a copy of all Document(s) You have in Your possession regarding the Claim, which includes the entire claims file, and any Documentation with respect to the reserve that have been established for the Claim or litigation.

4. Please produce a copy of all Document(s) You generated in processing the Claim.

5. Please produce copies of all training materials used to train all of the Persons that You have identified in the preceding Interrogatories, as having any part of the duties and services they provided to You, in handling any aspect of Dr. Bergquist's Claim.

6. Please produce copies of any statements taken of Plaintiff by any person, including any adjuster, agent, attorney or any other person acting on Your behalf and pertaining to any matter connected with this Claim.

7. Please produce copies of all Documents that You have Identified in the preceding Interrogatories.

8. Please produce a complete copy of the State Farm Policy.

## REQUEST FOR ADMISSIONS

1. Admit that cervical spine manipulation is a procedure required in the usual and customary practice of chiropractics.

2. Admit that Dr. Bergquist can no longer safely perform cervical spine manipulation.

3. Admit that Dr. James F. Johnson recommended that Dr. Bergquist no longer perform cervical spine manipulation.

8

4.     Admit that Dr. Suga described Dr. Bergquist's limitations as "probably permanent."

DATED this 22nd day of April 2009.

SCHOENBECK LAW

By: _____

LEE SCHOENBECK
Attorney for Plaintiff
P.O. Box 1325
Watertown, South Dakota  57201
(605) 886-0010

9



# James F.
# Johnson, M.D., P.C.

2301 25th Street South
Suite F
Fargo, ND 58103
Phone (701) 241-9300
Fax (701) 235-4525

October 27, 2008

Megan Duty
Administrative Assistant
MCN
901 Boren Avenue, Suite 1400
Seattle, Washington 98104-3529

Re:  Alan Bergquist      Claim # : 41- HoB349425

Dear Ms. Duty:

Thank you for your letter dated October 24, 2008.  Two interrogatories were put forth and the answers to those interrogatories are as follows:  Apparently another letter had been sent on October 15, 2008, however, I was not in receipt of that.  The question has been resubmitted and I will answer that interrogatory as well.

The claims manager has asked for a comment on the following questions.

1. The insured's ability or inability to perform the management supervision administration of his businesses?  I believe that the patient is able to perform management supervision in administration of his businesses.

2. Would I deem Mr. Alan Bergquist totally disabled from his occupational duties as a business owner/manager?  I would not deem him totally disabled from his occupational duties as a business owner/manager.  In my understanding in visiting with the patient, as well as, reviewing his notes, his main concern was having these electrical sensations occur while he was doing a cervical spine manipulation.  This would be a point to consider until further workup.  I believe that this answer can be clarified more by a neurological examination, which I have recommended.  In the meantime, I think that he could do other manipulations such as lumbar spine, shoulder, etc.

Should you need any further information, do not hesitate to write or call.

Respectfully,

James F. Johnson, M.D.
bj



EXHIBIT
A



**State Farm®**
Providing Insurance and Financial Services
Home Office, Bloomington, Illinois 61710

Health Operations Center West
P.O. Box 339403
Greeley, CO 80633-9403

January 14, 2009

|ılılıılılıılılılılılılılıılılılıılılılıılılıılıılılıl|
DR. ALAN BERGQUIST
47984 FISH HAVEN RD
BIG STONE CTY, SD 57216-8224

                    Re:   Policy     H0B754293 41
                          Claim      41 H0B349425

Dear Dr. Bergquist:

We have completed our review of your disability insurance claim.

Your policy provides monthly disability benefits if you suffer from a totally disabling condition which keeps you from working at your occupation. We encourage you to review the Definitions section of your policy for an explanation of the terms "Total Disability" and "Occupation." We also encourage you to review the Benefit Provisions section of your policy which explains when the policy pays benefits for a qualifying Total Disability.

From the information available, it appears you are not totally disabled as defined in your policy. We regret, therefore, that we are unable to provide disability benefits based upon the information and documentation that has been provided to us.

We want to be fair in our evaluation of your claim. If you have other pertinent facts which you think we should consider, please let us know.

Sincerely,

Heidi Winkle
Health Claim Team Leader
Health Insurance Department
State Farm Mutual Automobile Insurance Company
970-395-6179

cc: Scriver 41-6102



EXHIBIT
B